UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD R. REINA, on behalf of
himself and others similarly situated,

     Plaintiff,

v.                                 CASE NO: 8:03-cv-1958-T-23TGW

TROPICAL SPORTSWEAR
INTERNATIONAL CORPORATION, et al.,

     Defendants.

_____/

## ORDER

An April 5, 2006, order (Doc. 106) preliminarily approved the parties' "Stipulation

and Agreement of Settlement" (Doc. 105, Ex. 1) (the "Stipulation") and, pursuant to Rule

23, Federal Rules of Civil Procedure, preliminarily certified this action as a class action

on behalf of (1) all persons who, between June 27, 2001, and January 14, 2004,

purchased or otherwise acquired Tropical Sportswear International Corporation ("TSI")

common stock and were allegedly damaged and (2) all persons who purchased or

otherwise acquired TSI common stock issued under or traceable to TSI's May 23, 2002,

registration statement/prospectus filed with TSI's secondary public offering and were

allegedly damaged (collectively, "the Class"[1]).  The order also approved the "Notice of

Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and

---

[1] Excluded from the Class are any defendant; any member of the immediate
family of any individual defendant; any subsidiary or affiliate of TSI; any current or
former director or officer of TSI or its subsidiaries or affiliates; any entity in which
any defendant has a controlling interest; and any legal representative, heir,
successor in interest, or assignee of any defendant.  (Doc. 106)

Settlement Fairness Hearing" (Doc. 105, Ex. A-1) (the "Notice"), scheduled a settlement

fairness hearing, and appointed Rust Consulting, Inc., ("RC") as the claims

administrator.  Notice was provided in accordance with the order of preliminary

approval, a summary notice of the settlement was published (Doc. 110, Ex. D) in the

The Wall Street Journal on April 26, 2006, and the settlement fairness hearing was held

on July 10, 2006.

A July 11, 2006, order (Doc. 112) (1) certified this action as a class action on

behalf of the Class, (2) approved the settlement as fair, reasonable and adequate, (3)

directed the Class members and the parties to consummate the settlement in

accordance with the terms and provisions of the Stipulation, (4) approved the plan of

allocation for the settlement proceeds (the "Plan of Allocation"), (5) directed the

plaintiffs' counsel and the claims administrator to administer the Stipulation in

accordance with its terms and provisions, and (5) dismissed the complaint with

prejudice.  The court retained jurisdiction to enforce the Stipulation and the order and to

hear any motion for fees and expenses incurred in connection with administering and

distributing the settlement proceeds to the Class members.

Under the terms of the Stipulation, an $8 million settlement fund was established

for the benefit of the Class for the settlement of this action.  Lead plaintiffs Alaska

Laborers Employers Retirement Fund and Gregory S. and Michele L. Young (the

"plaintiffs") move (Doc. 119) for an order (1) approving RC's determinations regarding

the acceptance and rejection of claims submitted by claimants; (2) directing payment of

$38,422.33 out of the settlement fund to RC for the balance of its fees and expenses;

(3) directing distribution of the net settlement fund to Class members whose proofs of

claim RC accepted; and (5) authorizing the destruction of paper copies of proof of claim forms one year after the distribution of the net settlement fund and authorizing the destruction of electronic files containing claim records three years after distribution of the net settlement fund.  The lead plaintiff's motion (Doc. 119) is **GRANTED**.

RC's affidavit (Doc. 120) describes the procedures used to determine the acceptance and rejection of claims submitted by claimants.  Pursuant to the terms of the Stipulation and the Notice, all Class members wishing to participate in the Settlement Fund were required to submit proofs of claim by mail, postmarked no later than September 8, 2006.  RC received all claims and, to the extent that a claim was deficient, RC notified the claimant of the deficiency and advised the claimant how to cure the deficiency.  Where a claimant failed to cure a deficiency, or where the claim showed that the claimant was not entitled to receive a share of the net settlement fund, RC notified the claimant of the rejection of the claim and of the claimant's right to request the court's review of RC's determination.  All rejection letters stated that a claimant had the right within twenty days after the mailing of the rejection to contest the rejection and request a hearing before the court.  No claimants have outstanding requests for judicial review of a rejected claim.  Claims that were properly submitted and supported with documentary evidence were recognized on the basis of the formula in the Plan of Allocation set forth in the Notice.

In one respect, RC departed from the July 11, 2006, order.[2]  Approximately thirty-eight claims that were postmarked after the September 8, 2006, submission deadline (the "tardy claims") were not for that reason rejected.  RC believes that no delay in the processing or distribution of the settlement fund resulted from accepting the tardy claims.  However, because a proportional distribution of the net settlement fund requires that there be a final cutoff date after which no more claims may be accepted, RC and the plaintiffs propose October 15, 2007, as the final cut-off date.  RC's determinations regarding the acceptance and rejection of claims submitted by claimants, including RC's determination to accept the tardy claims, are **APPROVED**.  The proposal of October 15, 2007, as the final cut-off date is **APPROVED**, and no claim submitted after October 15, 2007, shall be accepted for any reason.

Pursuant to the terms of the Stipulation (Doc. 105, Ex. 1) and the July 11, 2006, order (Doc. 112), the plaintiffs request authorization for two payments out of the settlement fund: (a) a payment to RC of $38,422.33, which is the balance of its fees and expenses for mailing the Notice, processing the claims, and distributing the net settlement fund.  The plaintiffs' request is **APPROVED** and the plaintiffs' lead counsel shall pay $38,422.33 out of the settlement fund to RC.

Upon deduction of the fees and expenses previously paid from the settlement fund and the payments to RC and in accordance with the Stipulation, the Plan of

---

[2]  The Stipulation contemplates extension of the deadline for submission of claims by court order. See Doc. 105, Ex. 1, ¶ 15(b) ("Any Class Member who fails to submit a Proof of Claim by such date shall forever be barred from receiving any payment pursuant to this Stipulation (unless, by order of the Court, a later submitted Proof of Claim by such Class Member is approved) . . . ."

Allocation, and the procedures described in the RC affidavit, RC shall distribute the balance of the settlement fund (the "net settlement fund") to the authorized claimants whose claims RC accepted as listed in Exhibit B of the RC affidavit.  The plaintiffs' proposal that in order to encourage Class members promptly to cash their distribution checks and to avoid or reduce future expenses to the Class resulting from unpaid distributions the distribution checks shall bear the notation "CASH PROMPTLY.  THIS CHECK MAY BE VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED WITHIN 180 DAYS AFTER ISSUE DATE" is **APPROVED**.  The plaintiffs propose that if any balance remains in the settlement fund one year after the initial distribution, whether by reason of returned funds, tax refunds, interest, uncashed checks, or otherwise, the plaintiffs' lead counsel shall redistribute the remaining funds to Class members who have cashed their distribution checks and who would receive at least $10.00 from such a redistribution, and if any balance remains in the settlement fund six months after this redistribution, the plaintiffs' lead counsel shall distribute the remaining funds to non-sectarian, not-for-profit, I.R.C. Section 501(c)(3) organizations designated by the plaintiffs' lead counsel.  Finally, RC may destroy paper copies of proof of claim forms one year after distribution of the net settlement fund and may destroy electronic copies of claim records three years after distribution of the net settlement fund.

ORDERED in Tampa, Florida, on March 28, 2008.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

cc:    US Magistrate Judge